IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 05-cr-00346-EWN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

3.    FRED GOLDTOOTH,

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

The United States of America, by and through Acting United States Attorney William J. Leone, and Assistant United States Attorney Linda A. McMahan, and Defendant Fred Goldtooth and his attorney Assistant Federal Public Defender Robert W. Pepin, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing.

### I. PLEA AGREEMENT

Defendant agrees to plead guilty to a one count Information charging a violation of Title 18, United States Code, Sections 1791 (a)(2) and (b)(3) and 2, Providing or Possessing Contraband in Prison and Aiding and Abetting same.

1

Court Exhibit 1

The government agrees, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, that it will make a recommendation for a particular sentence with the understanding that such recommendation shall not be binding on the Court. The government agrees the recommendation will be that the Court, after determining the applicable advisory guideline sentencing range, impose a sentence of imprisonment at the bottom of the advisory guideline range. The government will make such a recommendation provided there is no downward departure argued or granted from that range.

Additionally, the government agrees to dismiss the Indictment against this defendant following sentencing of the defendant pursuant to this plea agreement.

## II. MAXIMUM STATUTORY PENALTIES

The maximum statutory penalties for the offense are the following: A term of imprisonment of not more than five years, a fine of not more than $250,000 or both; a special assessment fee of $100; and a term of supervised release of not more than three years. A violation of this section must be consecutive to the sentence being served by the inmate at the time the inmate commits the violation. The Court can impose a prison sentence for a violation of the conditions of supervised release. The Court can order defendant to pay the costs of supervision and/or incarceration.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

2

### III. ELEMENTS OF THE OFFENSE

Defendant understands in order to prove his guilt, the United States would have to prove the following elements beyond a reasonable doubt:

1. Defendant knowingly possessed or aided and abetted the possession of a prohibited object, that is, an object designed and intended to be used as a weapon; to wit: a prison made knife commonly called a "shank" on or about April 30, 2003, in the State and District of Colorado; and

2. The aiding and abetting of the possession occurred while defendant was an inmate of a prison, namely: United States Penitentiary in Florence, Colorado.

Defendant understands and acknowledges by his guilty plea he is admitting he committed each of the above acts.

### IV. STIPULATION OF FACTUAL BASIS AND FACTS
### RELEVANT TO SENTENCING

The parties agree there is no dispute as to the material elements which establish a factual basis for the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties stipulate are relevant as they would apply to the advisory sentencing guidelines, pursuant to §1B1.3 of those advisory guidelines, for computing the appropriate guideline range. To the extent the parties disagree about the

3

facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. The parties agree that disputed facts will be resolved by the Court at sentencing.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein. These facts or factors may include factors to be considered in imposing sentence outlined in Title 18, United States Code, §3553(a).

The parties agree the government's evidence would show the date on which conduct relevant to the offense (§1B1.3) began is April of 2003.

The parties stipulate the government's evidence would be:

Inmate Arnold Haskins was assaulted with a dangerous weapon, a prison "shank," resulting in bodily injury on April 30, 2003, at the United States Penitentiary (USP) in Florence, Colorado. The government's evidence would prove Inmate Ricky Rivera Mungia wielded the "shank" on that date. On April 27, 2003, at the USP, three days before the assault charged in this case, three African Americans were charged with assaulting a Native American using a deadly weapon by stabbing the victim repeatedly. This was the second deliberate attack by African Americans upon Native Americans in this facility. According to intelligence gathered through the subsequent investigation, the assault in this case may have been motivated by the need for the Native Americans to respond to earlier attacks.

4

On the evening of April 30, 2003, at approximately 8:00 p.m., victim Haskins heard the announcement for inmates to return to their cell for the evening count. Based on the early count call, Haskins surmised there must be a problem in the institution. Thus, after obtaining some ice, he returned to his cell for the evening count and stood outside the door of his cell looking over the rail to observe the common area of Charlie-A Unit. Suddenly and unexpectedly, Haskins was punched on the left side of his face. Victim Haskins broke free from his attackers and ran into his cell closing the door behind him.

A prison videotape of the event revealed that Co-Defendant Dock threw the first punch and he along with defendant and Co-Defendant Mungia broke into victim Haskins' cell. Prison personnel immediately became aware of the attack and proceeded to Haskins' cell. Several prison personnel, who were intervening in this attack, witnessed defendant and his co-defendants in Haskins' cell striking, injuring, and stabbing him. After each defendant was pulled from assaulting Haskins, the shank used to stab Haskins was recovered from Co-Defendant Mungia who was also wearing homemade body armor around his torso during the attack.

On May 8, 2003, victim Haskins was interviewed by Special Agents Andrew Stearns and James Moore. During the interview, Haskins stated he did not know why he was attacked by the three inmates. He indicated he would be able to identify his attackers from photos. He also described the clear shank used to stab him and provided a

description of inmate Mungia who was using the shank as a American Indian male with a long pony tale, approximately 5 feet ten inches tall, and weighing more than 200 pounds.

On May 26, 2005, Haskins was presented with three, six person photographic lineups. One of the lineups contained defendant's picture and other individuals who resembled Defendant Goldtooth. Haskins selected Defendant Goldtooth stating he "thinks he was the third person in his cell" attacking him with the other two inmates. Haskins further described Defendant Goldtooth by indicating defendant has a tattoo on the left side of his face.

The above events occurred in the State and District of Colorado.

## V. SENTENCING COMPUTATION

The parties stipulate that sentencing in this case will be determined by application of the advisory sentencing guidelines, issued pursuant to 28 U.S.C. §994(a), and Title 18, United States Code, Section 3553(a).

The parties understand these computations are not binding on the Court. See USSG § 6B1.4(d). The parties' estimated guideline computation is:

### A. Guideline Computation

1. The base offense level is 13. USSG § 2P1.2.[1]

2. The adjusted offense level is 13.

---

[1] The parties agree USSG Section 3A1.1 does not apply to the facts in this prison setting because the specific motivation for the attack and the intentional mental state required cannot be verified and proven beyond a reasonable doubt.

3. Defendant should receive a 2-level reduction for acceptance of responsibility. *See* USSG §3E1.1(a). That would result in an offense level of 11.

4. The parties estimate an extensive prior criminal record placing defendant in criminal history category V. This estimate is tentative and the category will ultimately be determined by the Court and Probation.

### B. Resulting Guideline Range

1. The guideline range resulting from an offense level of 11 and Criminal History Category V is 24-30 months imprisonment. However, to be as accurate as possible, the parties acknowledge the imprisonment range could be as low as 8 months (bottom of Category I) or as high as 33 months (top of Category VI).

2. The fine range for offense level 11 is $2,000 to $20,000 pursuant to USSG §5E1.2(c)(3).

3. A term of supervised release of at least 2 years but not more than 3 years pursuant to USSG § 5D1.2(a)(2).

4. Defendant must pay a mandatory $100 victim's fund assessment and may be required to pay costs of imprisonment and/or supervision.

### VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPIATE

The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the advisory sentencing guidelines take into account all pertinent sentencing factors with respect to

7

this defendant, and the charge to which defendant has agreed to plead guilty adequately reflects the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 4/24/06

Linda A. McMahan
Assistant U.S. Attorney

Date: 4/24/06

Fred Goldtooth
Defendant

Date: 4/24/0

Robert W. Pepin,
Defendant's Attorney